UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-20595-CR-GAYLES (GRAHAM)/OTAZO-REYES

UNITED STATES OF AMERICA,

v.

JACK KACHKAR,

    Defendant.
_____/

## REPORT AND RECOMMENDATION RE: MOTION TO DISMISS [D.E. 263]

THIS CAUSE came before the Court upon Defendant Jack Kachkar's ("Defendant" or "Kachkar") Motion to Dismiss Count 1 of the Indictment as Being Barred by the Statute of Limitations (hereafter, "Motion to Dismiss Count 1") [D.E. 263]. This matter was referred to the undersigned by the Honorable Darrin P. Gayles, United States District Judge, pursuant to Title 28, United States Code, Section 636, for report and recommendation [D.E. 271]. The undersigned held an evidentiary hearing on this matter on October 2, 2018 [D.E. 310]. Thereafter, the parties submitted post-hearing memoranda [D.E. 330, 337]. Upon a review of the evidentiary record and the arguments of counsel, the undersigned respectfully recommends that Defendant's Motion to Dismiss Count 1 be DENIED.

## PROCEDURAL AND FACTUAL BACKGROUND

On August 4, 2016, the grand jury returned a sealed indictment against Kachkar. See Indictment [D.E. 3].[1]

The Indictment generally alleges that, from 2003 to 2007, Kachkar served as Chief Executive Officer ("CEO") of Inyx, Inc. ("Inyx"), a pharmaceutical manufacturing company

---

[1] The Indictment was unsealed on September 30, 2016 [D.E. 6].

with corporate offices in Miami, Florida. Inyx also conducted business through wholly-owned subsidiaries operating in various locations, including Puerto Rico. In 2005, Westernbank Puerto Rico ("Westernbank") extended asset-based loans to Inyx Companies, with the latter's accounts receivable serving as security. By June 2007, the total amount loaned by Westernbank to Inyx Companies reached $142.5 million. At that time, Westernbank declared the Inyx loans in default and, after suffering losses exceeding $100 million, the bank ultimately collapsed. Id.

The Indictment further alleges that Kachkar engaged in a wire fraud scheme consisting of: submitting false customer invoices to the bank as collateral; causing customers to divert their payments to Inyx Companies rather than the bank's lockbox; misrepresenting to Westernbank executives the status of loan repayments and the value of the pledged assets; and misappropriating and embezzling the fraud proceeds for his personal use. Id.

Count 1 charges a specific instance of wire fraud affecting a financial institution, in violation of 18 U.S.C. § 1343, on May 15, 2006. Id. Defendant contends that the Indictment was returned beyond the ten-year statute of limitations applicable to this offense, even though on April 8, 2016 the presiding judge issued an order pursuant to 18 U.S.C.A. § 3292 suspending the running of the statute of limitation until September 18, 2016. See Motion to Dismiss Count 1 [D.E. 263 at 3-4].

## APPLICABLE LAW

Title 18, United States Code, Section 3292 provides, in pertinent part:

> Upon application of the United States, filed before return of an indictment, indicating that evidence of an offense is in a foreign country, the district court before which a grand jury is impaneled to investigate the offense shall suspend the running of the statute of limitations for the offense if the court finds by a preponderance of the evidence that an official request has been made for such evidence and that it reasonably appears, or reasonably appeared at the time the request was made, that such evidence is, or was, in such foreign country.

See 18 U.S.C.A. § 3292(a)(1) (hereafter, "Section 3292").

Defendant contends that the April 8, 2016 order suspending the running of the statute of limitations was ineffective because: (1) the government's application did not comply with Section 3292; (2) the evidence upon which the application was predicated is not admissible at trial; and (3) the application was pretextual.

## FINDINGS OF FACT

1. The following documents were admitted into evidence: Defendant's Exhibits A-N. The undersigned also incorporated into the evidentiary record the exhibits attached to the memoranda submitted by the parties in connection with the Motion to Dismiss Count 1. See [D.E. 263-1 to 263-2, 278-1 to 278-5].

2. On March 13, 2015, the U.S. Department of Justice ("DOJ") submitted to the Central Authority of the United Kingdom ("UK Central Authority") a Request for Assistance in the Investigation Relating to INYX, Inc. ("Inyx Request") [D.E. 278-1].

3. The Inyx Request sought "business records of Inyx UK Companies, held by Ernst & Young LLP ('Ernst & Young UK'), 1 More London Place, London, SE1 2AF, as administrator for the UK Companies." Id. at 2-3.

4. The Inyx Request also sought "business records of Ernst & Young UK's Fraud Investigation and Dispute Services (FIDS) practice, currently under the custody of Ernst & Young UK, 1 More London Place, London, SE1 2AF, which records relate to investigation by Ernst & Young UK of Inyx and the Inyx Companies." Id. at 3.

5. The Inyx Request explained that:

> The prosecuting authorities' investigation has included an interview of Jonathan Middup ("Middup"), Fraud Investigator for Ernst & Young UK. Middup, acting on behalf of Ernst & Young UK as administrator for the UK Companies, conducted extensive forensic analysis and investigation, assisted by FIDS

3

    Executive Director Victoria Spencer. Middup's forensic analysis and investigation were based on extensive review of Inyx and Westernbank business records and interviews of Inyx managers, ex-employees, vendors and customers. As a part of his investigation, Middup prepared an affidavit, a copy of which has been provided to the prosecuting authorities. The affidavit detailed his findings.

Id. at 4.

  6. In April 2016, the government submitted an *Ex Parte* Application for Suspension of Running of Statute of Limitations (hereafter, "Application") [D.E. 278-3, filed April 13, 2016, Case No. 16-mc-21311-DPG].

  7. In support of the Application, the government submitted AUSA Michael N. Berger's Declaration in Support of Application for Suspension of Running of Statute of Limitations, dated April 7, 2016 (hereafter, "Berger Declaration"), which stated, in pertinent part:

- Inyx operated certain subsidiaries in the United Kingdom (the "Inyx UK Entities") that maintained pharmaceutical facilities. Most of the fraudulent invoices submitted by Inyx to Westernbank came from the Inyx UK Entities and many of these relate to customers in the United Kingdom and elsewhere in Europe.

- Ernst & Young ("E&Y") was appointed in June 2007 as administrators of the Inyx UK Entities. E&Y conducted a fraud investigation relating to the Inyx UK Entities. According to E&Y, the company took custody of approximately 400,000 documents and conducted interviews of certain key individuals.

- On or about March 13, 2015, the Office of International Affairs of the United States Department of Justice made an official request pursuant to the Treaty between the United States of America and the United Kingdom on Mutual Assistance in Criminal Matters ("MLAT") for legal assistance in obtaining evidence (Exhibit A). Pursuant to this MLAT, the United States sought evidence from E&Y relating to the Inyx UK Entities. E&Y contested production of the documents.

- On or about March 18, 2016, a UK Court issued an order requiring E&Y to produce documents relevant to this matter (Exhibit

4

> B). Based on representations from E&Y, it is anticipated that an initial production of relevant documents will be produced in April 2016.

See Berger Declaration [D.E. 278-2].

8. Exhibit A to the Berger Declaration is the above-referenced Inyx Request [D.E. 278-1].

9. Exhibit B to the Berger Declaration is the UK Crown Court's Production Order, which required Ernst & Young UK to produce to a constable the materials described as "Jonathon Middup's 5 February 2008 issues memorandum, including all exhibits, attachments and supporting documents to it" [D.E. 278-5].

10. On April 8, 2016, the presiding judge issued an Order Granting Ex Parte Application for Suspension of Running of Statute of Limitations (hereafter, "Tolling Order") [D.E. 278-4, certified on April 12, 2016].

## DISCUSSION

As noted above, Defendant challenges the Tolling Order on the grounds that: (1) the government's application did not comply with Section 3292; (2) the evidence upon which the application was predicated is not admissible at trial; and (3) the application was pretextual. The undersigned addresses each of these arguments below.

### *1. Whether the Application met the requirements of Section 3292.*

Upon an application "indicating that evidence of an offense is in a foreign country," Section 3292 provides for suspension of the statute of limitations "if the court finds by a preponderance of the evidence that an official request has been made for such evidence and that it reasonably appears, or reasonably appeared at the time the request was made, that such evidence is, or was, in such foreign country." See 18 U.S.C.A. § 3292(a)(1). Defendant first argues that the Application "made no representation that it reasonably appeared *at the time of the*

*application* that the evidence was in the UK." See Jack Kachkar's Post-Hearing Memorandum for his Motion to Dismiss Count 1 Based Upon Statute of Limitations (DE 263) (hereafter, "Post-Hearing Brief") [D.E. 330 at 4]. The undersigned finds no merit in this argument. As shown above, the Berger Declaration that was attached to the Application stated that: fraudulent invoices submitted to Westernbank came from the Inyx UK Entities; Ernst & Young, as administrator of the Inyx UK Entities, conducted a fraud investigation of the Inyx UK Entities and took custody of approximately 400,000 documents; pursuant to the Inyx Request, DOJ sought evidence from Ernst & Young relating to the Inyx UK Entities; a UK Court issued an order requiring E&Y to produce documents relevant to this matter; and initial production was anticipated in April 2016. See Berger Declaration [D.E. 278-2]. Based on these averments, it reasonably appeared at the time of both the Inyx Request and the Application that the evidence sought in the Inyx Request was in the UK.

2. ***Whether the evidence obtained pursuant to the Inyx Request is admissible.***

Defendant further contends that the materials received by the government pursuant to the UK Crown Court's Production Order, namely, "Jonathon Middup's 5 February 2008 issues memorandum, including all exhibits, attachments and supporting documents to it," were prepared in anticipation of litigation, hence not admissible as business records. See Defendant's Post-Hearing Brief [D.E. 330 at 5] (citing Def's Exs. A-F, L). Defendant relies on United States v. Bischel, 61 F.3d 1429, 1433 (9th Cir. 1995) for the proposition that "evidence of an offense is essentially worthless unless admissible." See Defendant's Post-Hearing Brief [D.E. 330 at 4-5]. As noted by the government, however, the exhibits and supporting documents that were sent from the UK "could have been original evidence and therefore admissible for the government." See United States' Response to the Defendant's Post-Hearing Brief (hereafter, "Government's Response") [D.E. 337 at 4]. In any event, under Eleventh Circuit case law, it is immaterial for

6

the validity of a Section 3292 order that "none of the evidence requested or obtained by the Government was needed at trial." See United States v. Broughton, 689 F.3d 1260, 1275 (11th Cir. 2012).

### 3. *Whether the Application was pretextual.*

Finally, Defendant argues that the circumstances surrounding the Application strongly suggest that the Inyx Request was merely a pretext, designed to forestall the expiration of the statute of limitations as to Count 1. See Defendant's Post-Hearing Brief [D.E. 330 at 6]. According to Defendant, the government already had access to the documents sought in the Inyx Request. Id. (citing Def's Exs. G, J). Defendant also recycles his admissibility argument regarding the Middup affidavit and documents, and further contends that the Berger Declaration "did not describe any admissible evidence ordered to be produced from abroad or provide any reason to believe such evidence was needed." Id. Defendant cites no legal authority for this proposition and there is contrary authority. See United States v. Chen, No. 1-12-CR-350-03-SCJ, 2014 WL 5307518, at *13 (N.D. Ga. Oct. 15, 2014) (rejecting the argument that "a pretextual MLAT request voids any otherwise valid request").

## **RECOMMENDATION**

Based on the foregoing considerations, the undersigned RESPECTFULLY RECOMMENDS that Defendant's Motion to Dismiss Count 1 be DENIED.

Pursuant to Local Magistrate Judge Rule 4(b), the parties have seven days from the date of this Report and Recommendation to file written objections, if any, with the Honorable Darrin P. Gayles. Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein. See Resolution Tr. Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993). Further, "failure to object in accordance with the provisions of [28

7

U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." See 11th Cir. R. 3-1 (I.O.P. - 3).

RESPECTFULLY SUBMITTED in Miami, Florida this 19th day of December, 2018.

ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

cc: United States District Judge Darrin P. Gayles
United States District Judge Donald L. Graham
Counsel of Record