UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-20595-CR-GAYLES (GRAHAM)/OTAZO-REYES

UNITED STATES OF AMERICA,

v.

JACK KACHKAR,

      Defendant.

_____ /

## REPORT AND RECOMMENDATION RE: MOTION TO DISMISS [D.E. 404]

THIS CAUSE came before the Court upon Defendant Jack Kachkar's ("Defendant" or "Kachkar") Motion to Dismiss the Indictment Pursuant to the Fifth and Sixth Amendments (hereafter, "Motion to Dismiss") [D.E. 404]. This matter was referred to the undersigned by the Honorable Darrin P. Gayles, United States District Judge, pursuant to Title 28, United States Code, Section 636, for report and recommendation [D.E. 393]. Upon consideration of the factual record, the arguments of counsel and the relevant authorities, the undersigned respectfully recommends that Defendant's Motion to Dismiss be DENIED.

## THE CHARGES AGAINST KACHKAR

On April 20, 2017, the grand jury returned a Second Superseding Indictment (hereafter, "Indictment") against Kachkar, charging him with the following offenses:

| | |
|---|---|
| Counts 1-8: | Wire Fraud Affecting a Financial Institution, from 2005 to June 2007, in violation of 18 U.S.C. § 1343. |
| Count 9: | Wire Fraud Affecting a Financial Institution, from October 1, 2007 to October 18, 2007, in violation of 18 U.S.C. § 1343. |
| Count 10: | Wire Fraud, from April 2011 to January 2016, in violation of 18 U.S.C. § 1343. |

<u>See</u> Indictment [D.E. 113].

The Indictment alleges that, from 2003 to 2007, Kachkar served as Chief Executive Officer ("CEO") of Inyx, Inc. ("Inyx"), a pharmaceutical manufacturing company with corporate offices in Miami, Florida.  Inyx also conducted business through wholly-owned subsidiaries operating in various locations, including Puerto Rico.  In 2005, Westernbank Puerto Rico ("Westernbank") extended asset-based loans to Inyx Companies, with the latter's accounts receivable serving as security.  By June 2007, the total amount loaned by Westernbank to Inyx Companies reached $142.5 million.  At that time, Westernbank declared the Inyx loans in default and, after suffering losses exceeding $100 million, the bank ultimately collapsed.  <u>Id.</u>

In Counts 1 through 8, the Indictment alleges a wire fraud scheme against Kachkar consisting of: submitting false customer invoices to the bank as collateral; causing customers to divert their payments to Inyx Companies rather than the bank's lockbox; misrepresenting to Westernbank executives the status of loan repayments and the value of the pledged assets; and misappropriating and embezzling the fraud proceeds for his personal use.   Each of the eight counts is associated with a specific wire transfer.  <u>Id.</u>

In Count 9, the Indictment alleges that, in October 2007, Kachkar deposited a worthless $3 million check into a Mellon Bank corporate account he controlled, which resulted in the wiring of a provisional $1 million credit to that account and the subsequent wire transfer of those funds to Kachkar's personal account in Canada.  <u>Id.</u>

In Count 10, the Indictment alleges that Kachkar falsely represented to an individual named D.B. that he had received a substantial money judgment from the Federal Deposit Insurance Corporation ("FDIC") and that he needed funds to pay associated expenses prior to having the judgment funds released, which funds would be used to repay D.B.  As a result, D.B.

made $1.7 million worth of wire transfers to Kachkar during the period from 2011 to 2016, including a $262,000 wire transfer from D.B.'s bank account in Switzerland to an account controlled by Kachkar in Miami, Florida. Id.

## THE MOTION TO DISMISS

Prior to being indicted, Kachkar was involved in civil suits brought by the FDIC-R in Puerto Rico in connection with the collapse of Westernbank. Kachkar seeks dismissal of the Indictment on the grounds that, in the course of mediation in the civil suits, an FDIC-R official allegedly promised him that no criminal charges would be brought against him if he met certain conditions. Kachkar agreed to comply with the conditions and those lawsuits were resolved at mediation.

Kachkar contends that, at the time of this alleged promise by the FDIC-R official, the government was conducting a parallel criminal investigation against him, and that the FDIC-R official made an affirmative misrepresentation to him, which entitles him to outright dismissal of this prosecution. In the alternative, Kachkar seeks an evidentiary hearing.

In support of the Motion to Dismiss, Kachkar has submitted the affidavit of his counsel in the civil suits and relied on exhibits proffered at the October 2, 2018 evidentiary hearing on another Motion to Dismiss. In light of the government's position, see Government's Response to Motion to Dismiss (hereafter, "Response") [D.E. 412 at 2], the undersigned adopts this evidentiary record as undisputed. Hence, there is no need for a further evidentiary hearing.

## APPLICABLE LAW

To enforce a governmental promise, a defendant must prove: (1) that the government agent making the promise was authorized to do so; and (2) that the defendant detrimentally relied on the promise. See San Pedro v. United States, 79 F.3d 1065, 1068 (11th Cir. 1996) (citing

United States v. Kettering, 861 F.2d 675, 677 (11th Cir. 1988)). "For an agreement to be valid and binding, the agent must possess actual authority to make the promise—either express authority or authority implied in or incidental to a grant of express authority." Id. (citing Thomas v. INS, 35 F.3d 1332, 1338 (9th Cir. 1994)). "Estoppel and apparent authority normally will not substitute for actual authority to bind the United States government." Id.

Defendant does not claim that the FDIC-R official had actual authority to make the alleged promise of immunity from criminal prosecution to Defendant, subject to his compliance with specified conditions. Rather, he relies on the proposition that "a government official must not affirmatively mislead the subject of parallel civil and criminal investigations into believing that the investigation is exclusively civil in nature and will not lead to criminal charges." See Motion to Dismiss [D.E. 404 at 4] (citing United States v. Stringer, 535 F.3d 929, 940 (9th Cir. 2008)). A successful motion under this theory requires a showing of "trickery or deceit" on the part of the government official. Stringer, 535 F.3d at 940. The Stringer court found that this showing had not been made and reversed the district court's order dismissing the indictment, or, in the alternative, suppressing evidence. Id. at 932, 942.

## FACTS[1]

1.    In 2007, Kachkar was involved in civil suits related to the collapse of Westernbank. See FDIC-R v. Kachkar, et al., Case Nos. 07-1606; 08-2427; and 08-2428 (ADC).

2.    In 2008, a draft indictment against Kachkar had been prepared by the U.S. Attorney's Office in Puerto Rico.

3.    In 2013, Gustavo Lage, Esq. ("Attorney Lage") represented Kachkar in the civil litigation.

---

[1]  For purposes of this Report and Recommendation only, these facts are adopted from Defendant's Statement of Relevant Facts, and the supporting affidavit of Gustavo Lage, Esq. See Motion to Dismiss [D.E. 404, 404-1].

4.      On January 29, 2014, Attorney Lage and Kachkar attended a day-long court ordered mediation in San Juan Puerto Rico regarding the FDIC-R's claims against Inyx, Kachkar and Kachkar's wife (hereafter, the "Kachkar Parties"). Jordan Traverson ("Traverson") attended the mediation on behalf of the FDIC-R and Judge Charles Cordero ("Judge Cordero") was the mediator.

5.      In the settlement negotiations, the FDIC-R sought dismissal of the Kachkar Parties' then pending appeal of the civil litigation before the First Circuit Court of Appeal, and the Kachkar Parties were looking for a firm settlement number and assurances that there would be no criminal charges against any of them in the event the matter settled.

6.      During the course of the mediation, Traverson made a representation, in the doorway of a breakout room, that there would be no criminal charges filed against any of the Kachkar Parties. In turn, the Kachkar Parties would pay $3.6 million dollars to the FDIC-R and Kachkar would sit for a financial deposition.

7.      There was no signed mediated settlement agreement at the conclusion of the mediation. Drafts that were going to be subsequently exchanged were never finalized.

8.      The appeal was dismissed and Kachkar provided financial information to the FDIC-R and sat for a financial deposition conducted by FDIC-R's counsel.

## DISCUSSION

Defendant relies on the affidavit of Attorney Lage stating that Traverson, who was attending a mediation on behalf of the FDIC-R, made a representation, in the doorway of a breakout room, that there would be no criminal charges brought against Kachkar. There is no written confirmation of this representation since the parties never agreed to the terms of a signed mediated settlement agreement. On these threadbare facts, and without a showing of prejudice, dismissal of the Indictment is not warranted. Even in Stringer, upon which Defendant relies, the

5

trial court's order, which was reversed, called for dismissal of the indictment, or, in the alternative, suppression of evidence. Stringer, 535 F.3d at 932, 942. See also United States v. Deluca, No. 6:11-cr-221-Orl-28KRS, 2014 WL 3341345, at *8 (M.D. Fla. July 8, 2014) ("When a defendant has shown prejudice, a court must determine if a less drastic remedy, such as suppression of the evidence in question, can sufficiently address the constitutional violation.").

Moreover, in his statement of facts, Defendant does not claim that the government is utilizing the financial information he provided to the FDIC-R, in the form of documents or deposition testimony, to prosecute him. As noted by the government, "the defendant has not alleged that the government intends to use any of this information in its case in chief. And the government does not intend to do so." See Government's Response [D.E. 412 at 5]. In his Reply to the Government's Response (hereafter, "Reply") [D.E. 428], Defendant argues that, should he decide to "take the stand and testify in his defense, the government will seek to cross-examine him with his deposition and the 'extensive productions of documents and declarations' he provided." See Reply [D.E. 428 at 3]. Even if such a move by the government could support a showing of prejudice, Defendant's contention is speculative at this pre-trial juncture. Therefore, Defendant is not entitled to the relief he seeks in his Motion to Dismiss, either in the form of dismissal of the Indictment or in the form of the less drastic remedy of suppression of evidence.[2]

## RECOMMENDATION

Based on the foregoing considerations, the undersigned RESPECTFULLY RECOMMENDS that Defendant's Motion to Dismiss be DENIED.

Pursuant to Local Magistrate Judge Rule 4(b), the parties have seven days from the date

---

[2] Should Defendant actually choose to testify at trial, the Court could consider revisiting this issue prior to Defendant's cross-examination.

of this Report and Recommendation to file written objections, if any, with the Honorable Darrin P. Gayles. Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein. See Resolution Tr. Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993). Further, "failure to object in accordance with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." See 11th Cir. R. 3-1 (I.O.P. - 3).

RESPECTFULLY SUBMITTED in Miami, Florida this 20 day of December, 2018.


ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

cc:     United States District Judge Darrin P. Gayles
        United States District Judge Donald L. Graham
        Counsel of Record