**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 16-20595-CR-GAYLES(GRAHAM)**

**UNITED STATES OF AMERICA**

**v.**

**JACK KACHKAR,**

     **Defendant.**
_____/

## ORDER ON LIMITED REMAND

THIS MATTER came before the Court on a limited remand from the United States Court of Appeals for the Eleventh Circuit (the "Limited Remand"). [ECF No. 637]. In the Limited Remand, this Court was directed to explain why the appellate issues raised by Defendant Jack Kachkar ("Kachkar") in his Motion for Bond Pending Appeal, [ECF No. 626], do not present a substantial question of law or fact likely to result in reversal, an order for new trial, a sentence that does not include a term of imprisonment, or a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process. The Court of Appeals also directed this Court to clarify the matter of Kachkar's citizenship. The Court has again reviewed the record, which has 655 docket entries including the transcript of the 12-day jury trial,[1] and makes the following findings of fact and conclusions of law.

---

[1] This case was randomly assigned to the undersigned judge in 2016, who issued the pre-trial order detaining Kachkar. [ECF No. 37]. However, the Honorable Donald L. Graham, Senior United States District Judge for the Southern District of Florida, presided over Kachkar's jury trial and sentencing. Therefore, in this Order, the Court occasionally refers to Judge Graham as "the trial judge".

## BACKGROUND

### I.   <u>Relevant Facts</u>[2]

Kachkar was born in Damascus, Syria. [ECF No. 578 ¶ 103]. He is a citizen of Canada and a lawful permanent resident of the United States. *Id.* at 4; ¶¶ 100, 105.

Kachkar was Chairman and CEO of Inyx Inc., a publicly traded, multinational pharmaceutical company. At Kachkar's direction, Inyx entered into loan agreements with Westernbank Puerto Rico ("Westernbank"). Kachkar caused Inyx employees to submit nearly $100 million worth of false and fraudulent customer invoices to Westernbank as collateral for Inyx's loans. Kachkar also made false and fraudulent representations to Westernbank executives that outside lenders, including Credit Suisse, Goldman Sachs, Pareto, and others, had agreed to pay off the Westernbank loans contingent on continued funding to Inyx from Westernbank.

Kachkar falsely and fraudulently represented to Westernbank executives that he had substantial assets behind a personal guarantee signed with Westernbank to cover any collateral shortfall, including a $1 billion copper mine in Mexico. He also sent a forged and altered spreadsheet to Westernbank executives with a copper mine valuation of $1 billion when, in truth, the mine essentially had no value. Kachkar also misappropriated approximately $25 million in funds from the Westernbank loans to Inyx to his personal accounts and used much of these funds for personal expenditures, including the purchase of multiple properties in South Florida. In addition, Kachkar misappropriated approximately $9.6 million in funds from the Westernbank loans to a consulting company and used these funds to prop-up Inyx's share price. During the

---

[2]  The facts proved at trial are set forth in the parties' appellate briefs. Therefore, the Court provides only a brief recitation of the facts.

Westernbank fraud, Kachkar sold millions of dollars of Inyx shares for the benefit of his trusts in Canada.

In October 2007, Kachkar also knowingly deposited a worthless $3 million check into a Mellon United National Bank ("Mellon Bank") account he controlled. Kachkar then caused Mellon Bank to wire nearly all the provisional credit of funds out of that account to other accounts he controlled, including a $1 million wire to a Canadian account. When the check bounced, Kachkar refused to reverse the $1 million wire transfer to Canada. There has not been an independent accounting of the proceeds of the frauds since much of these funds went to foreign countries.

## II.     <u>Procedural History</u>

On December 1, 2016, a federal grand jury returned a Superseding Indictment against Kachkar, charging him with nine counts of wire fraud affecting a financial institution, in violation of 18 U.S.C. § 1343. [ECF No. 31]. The first eight counts of the Superseding Indictment related to the $120 million fraud against Westernbank, and the ninth count related to the $3 million fraud against Mellon Bank. Following a hearing, this Court issued a Detention Order finding that Kachkar was a risk of flight and that no condition or combination of conditions would reasonably assure his appearance in court as required. [ECF No. 37]. The Eleventh Circuit affirmed the Detention Order on June 21, 2017. *United States v. Kachkar*, 701 F. App'x 744 (11th Cir. 2017). In *Kachkar*, the Eleventh Circuit noted that Kachkar failed to explain why his poor physical health, which requires "that he receive diabetic medication and treatment for his hemochromatosis," showed that he was not a flight risk. *Id*. at 747.

On April 20, 2017, a federal grand jury returned a Second Superseding Indictment, [ECF

No. 113], which again charged Kachkar with nine counts of wire fraud affecting a financial institution and an additional count of wire fraud, in violation of 18 U.S.C. § 1343. The additional count, Count 10, was later dismissed by the Government. The jury trial commenced on January 8, 2019, before Senior United States District Judge Donald L. Graham. [ECF No. 467]. On February 4, 2019, the jury returned guilty verdicts as to all nine remaining counts. [ECF No. 507]. A judgment of acquittal was entered as to Count 9. [ECF No. 589]. On July 2, 2019, Judge Graham sentenced Kachkar to concurrent terms of 360 months' imprisonment as to Counts 1-8. [ECF No. 609]. Kachkar was also ordered to pay more than $103 million in restitution. *Id.*

Kachkar appealed his convictions and sentence, raising six (6) primary issues. The first three issues concern rulings at trial: (1) the trial judge gave an erroneous jury instruction as to wire fraud; (2) the trial judge admitted evidence in violation of the Fourth Amendment; and (3) the trial judge improperly excluded defense evidence. The last three issues on appeal relate to Kachkar's sentencing: (4) at sentencing, the trial judge failed to consider Westernbank's gross negligence and a chart of comparable fraud sentences; (5) the trial judge erred by enhancing Kachkar's guideline range for substantially jeopardizing the safety and soundness of a financial institution under § 2B1.1(b)(17)(b)(i) and for substantial financial hardship under § 2B1.1(b)(2)(A)(iii)[3] of the United States Sentencing Guidelines ("U.S.S.G."); and (6) the trial judge violated Kachkar's Sixth Amendment rights by awarding $103 million in restitution as the jury did not find that loss amount beyond a reasonable doubt.

---

[3] At sentencing, the trial judge found that a two-level enhancement for substantial financial hardship, pursuant to § 2B1.1(b)(2)(A)(iii), was warranted based on the facts. The trial judge did not, however, apply the additional two-level enhancement as he believed it would be unfair to Kachkar to do so. [ECF No. 614:105-109]. Therefore, the Court does not address the merits of this issue in this Order.

Kachkar filed a Motion for Bond Pending Appeal (the "Motion") on April 1, 2020. [ECF No. 626]. The Motion argues that Kachkar is not a flight risk, his serious health issues warrant bond pending appeal, and his appeal is likely to result in an order for new trial. *Id.* In his Motion, Kachkar only raises three of his claims on appeal: the erroneous jury instruction, the improperly admitted evidence, and the excluded defense evidence. *Id.* The Motion does not assert Kachkar's appellate claims related to his sentencing.

This Court denied the Motion on April 22, 2020, finding that Kachkar still poses a risk of flight and that the issues he raises on appeal are unlikely to result in a reversal, new trial, or a sentence without incarceration. [ECF No. 634]. In finding that Kachkar poses a risk of flight, the Court noted that Kachkar is a citizen of Syria[4] and Canada, he has access to millions of dollars from foreign accounts, he has made recent trips to countries without extradition treaties with the United States, and he has traveled by non-commercial private jets. *Id.* The Court also noted that Kachkar had an increased incentive to flee based on his convictions. *Id.*

## LEGAL STANDARD

Pursuant to 18 U.S.C. § 3143, the Court may release a defendant pending appeal if it finds (1) "by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community" and (2) "that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in [] reversal, [] an order for new trial, [] a sentence that does not include a term of imprisonment, or [] a reduced sentence . . . ." Considering these factors, this Court previously denied Kachkar's post-conviction Motion. [ECF No. 634]. Having done a further review on this limited remand, the Court's conclusion remains

---

[4] While Kachkar was born in Syria, it is unclear whether he retains Syrian citizenship.

the same: Kachkar presents a flight risk and the issues he raises on appeal are unlikely to result in reversal, new trial, or a sentence without incarceration.

## DISCUSSION

As noted above, this Court issued a pre-trial Detention Order which found that Kachkar is a risk of flight and that no condition or combination of conditions would reasonably assure his appearance in court as required. That finding was affirmed on appeal. *Kachkar*, 701 F. App'x at 747. Since that time, a federal jury found Kachkar guilty of nine counts of wire fraud, and he has been sentenced to concurrent terms of 360 months' imprisonment for eight of those counts and ordered to pay more than $103 million in restitution. Now that Kachkar has been convicted and sentenced to a significant term of imprisonment, his incentive to flee has increased.

While the Court is mindful of Kachkar's health issues and the risk of danger to him because of the COVID-19 pandemic, it does not change this Court's conclusion that Kachkar poses a risk of flight if released pending appeal.[5] As noted in the original order denying Kachkar's Motion, the Court has considered the impact of COVID-19 using as guidance the factors set forth in *United States v. Clark*, 448 F. Supp. 3d 1152, 1157 (D. Kan. 2020). These factors include "(1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others." *Id.* When balanced against the facts underlying

---

[5] The Court conducted a hearing on October 22, 2020, on whether Kachkar was receiving appropriate medical treatment while incarcerated. [ECF Nos. 654 & 658]. Although the Court received assurances from the Bureau of Prisons ("BOP") that Kachkar was receiving the medical treatment he requires, his counsel subsequently submitted a Notice, [ECF No. 657], that BOP's representation was not accurate. While this case proceeds on appeal, this Court is willing to further address Kachkar's medical needs with BOP.

6

Kachkar's convictions and his sentence, the Court does not find that these factors weigh in favor of release.

For purposes of the instant Motion, Kachkar only raises three of his claims on appeal: the erroneous jury instruction, the improperly admitted evidence, and the excluded defense evidence. While Kachkar does not explicitly assert the sentencing issues as bases for his Motion, the Court will address them here because his substantial sentence is relevant to the Court's finding that Kachkar is a flight risk.

## I.    Wire Fraud Instruction

Kachkar first argues that the trial judge gave an erroneous jury instruction for wire fraud. For the wire fraud counts, the trial judge instructed the jury that "[t]he Defendant can be found guilty of this crime only if all the following facts are proved beyond a reasonable doubt: (1) the Defendant knowingly devised or participated in a scheme to defraud, or to obtain money or property by using false pretenses, representations, or promises; (2) the false pretenses, representations, or promises were about a material fact; (3) *the Defendant acted with the intent to defraud*; (4) the Defendant transmitted or caused to be transmitted by wire some communication in interstate commerce to help carry out the scheme to defraud; and (5) *the scheme affected a financial institution*. [ECF No. 499 at 8] (emphasis added). The trial judge instructed the jury that "[t]he 'intent to defraud' is the specific intent to deceive or cheat someone, usually for personal financial gain or to cause financial loss to someone else." *Id*. at 9. The trial judge also instructed the jury that "'[a]ffecting a financial institution' means exposing the financial institution to an actual loss or exposing the financial institution to an increased risk of loss." *Id*.

At issue here is the trial judge's partial instruction to the jury that "[i]f the Defendant

deceived someone to enter into a transaction but did not intend to cause a personal gain for himself or a financial loss to the bank, the Defendant has not schemed to defraud." *Id.* According to Kachkar, including the words "a personal gain for himself or" in the latter instruction misstated the law which requires a showing that the defendant intended to harm the victim. *See United States v. Takhalov*, 827 F.3d 1307 (11th Cir. 2016), *opinion modified on denial of reh'g*, 838 F.3d 1168 (11th Cir. 2016). However, Kachkar's appeal is not likely to result in reversal or a new trial because the trial judge's instruction was consistent with the holding in *Takhalov*.

The wire fraud statute "makes criminal any 'scheme or artifice to defraud.'" *Id.* at 1312 (citing 18 U.S.C. § 1343). Therefore, to be convicted of wire fraud, "the scheme must be a scheme to defraud rather than to do something other than defraud." *Id.* In *Takhalov*, the Eleventh Circuit explained that "there is a difference between deceiving and defrauding: to *defraud*, one must intend to use deception to cause some injury; but one can *deceive* without intending to harm at all." *Id.* (citations omitted). "[T]hat distinction mean[s] that 'if a defendant does not intend to harm the victim — to obtain, by deceptive means, something to which the defendant is not entitled — then he has not intended to defraud the victim.'" *United States v. Waters*, 937 F.3d 1344, 1352 (11th Cir. 2019) (citing *Takhalov*, 827 F.3d at 1313). Therefore, "if there is no intent to harm, there can only be a scheme *to deceive*, but not one *to defraud*." *Id.*

As noted above, the trial judge clearly instructed the jury that it must find, beyond a reasonable doubt, that Kachkar acted with the intent to defraud a financial institution by exposing it to an actual loss or to an increased risk of loss. *See* [ECF No. 499 at 8-9]. The extraneous language, "a personal gain for himself or," is not legally or factually inconsistent with a necessary finding of harm to the victim pursuant to *Takhalov*. The Government presented compelling

8

evidence that Kachkar intended to harm Westernbank through his deception. From this record, a reasonable jury could find that Kachkar intentionally deceived Westernbank into issuing Inyx business loans for millions of dollars, that Kachkar intended to use a substantial amount of those loan proceeds for personal expenses, and that he knowingly exposed Westernbank to an actual loss or an increased risk of loss. Therefore, Kachkar is not likely to succeed on appeal on this issue.

## II.     **Admitted Evidence**

Kachkar next argues that the trial judge improperly admitted quotations obtained through warrantless searches in violation of the Fourth Amendment. The quotations were a part of records preserved from litigation between Westernbank and Inyx in Canada.

In March 2010, the United States Government filed a Mutual Legal Assistance Treaty ("MLAT") request with the Canadian government, requesting records from Inyx and its subsidiaries related to Westernbank loans. The request was granted, and a Canadian court issued a "Gathering Order" which instructed Canadian law enforcement to collect certain documents. The Gathering Order excluded documents subject to attorney-client privilege and outlined a procedure by which Kachkar could assert the privilege. The Gathering Order also authorized representatives of the United States to be present during the gathering of records and assist the Canadian authorities.

In Kachkar's presence and with the assistance of agents from the United States Federal Deposit Insurance Corporation Office of Inspector General ("FDIC"), Canadian law enforcement officers reviewed 400 boxes of documents to determine whether the documents fell within the permitted search. Accordingly, boxes were labeled "responsive," "non-responsive," or "privileged." Following that review, the Canadian court authorized 80-90 boxes of records to be

sent to the United States for further review. FDIC agents copied those documents upon receipt and returned the originals to Canada. After a more detailed review of the documents, the Government decided to use some of them at Kachkar's trial. Kachkar moved to suppress that evidence, arguing that the warrantless searches inside the United States violated his Fourth Amendment rights under the private-search doctrine. [ECF No. 254].

On December 26, 2018, United States Magistrate Judge Alicia Otazo-Reyes issued a Report and Recommendation (the "Report"), [ECF No. 433], which recommended that the suppression motion be denied. In her Report, the Magistrate Judge found that Kachkar's Fourth Amendment rights were not violated by Canada's compliance with the MLAT request or by the Government's failure to obtain a search warrant for the documents after they were sent from Canada. In particular, the Magistrate Judge found that the FDIC agents attended the document review in Canada to assist Canadian law enforcement in determining which materials were relevant to the MLAT request and that such a limited role did not rise to the level of engaging in a joint venture or shock the conscience of the court. The Government and Kachkar filed objections to the Report. [ECF Nos. 441 & 449]. On January 4, 2019, the trial judge conducted a de novo review of the record, overruled the objections, adopted the Report in its entirety, and denied Kachkar's motion to suppress. [ECF No. 454].

At trial, the Government introduced quotations derived from the Canadian records to connect Kachkar to fraudulent invoices. On appeal, Kachkar argues that it was error to admit the quotations at trial because they were a byproduct of the unconstitutional searches. Kachkar does not contest the validity of the search by Canadian officials. Rather, he argues that agents exceeded the scope of that search by not obtaining a search warrant. But, Kachkar is likely to fail on appeal

for reasons set forth in the Magistrate Judge's Report and the trial judge's order adopting the Report.

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV. "The Fourth Amendment is generally inapplicable to actions carried out by foreign officials in their own countries enforcing their own laws, even if American officials are present and cooperate in some degree." *United States v. Behety*, 32 F.3d 503, 510 (11th Cir. 1994). "Evidence obtained by foreign police officials from searches conducted in their country is generally admissible in federal court regardless of whether the search complied with the Fourth Amendment" unless either of two exceptions apply: (1) where "the conduct of the foreign officials during the search and seizure 'shock[s] the judicial conscience'" or (2) where "the participation of federal agents [was] so substantial so as to convert the search into a joint venture." *Id*. at 510-11 (citations omitted).

Based on the record, the Magistrate Judge correctly determined that the documents, sent by Canada to the United States pursuant to the MLAT request, were admissible at trial. Kachkar did not assert that the search at issue should shock the judicial conscience, and the Magistrate Judge did not find a basis to make such a finding. [ECF No. 433 at 20]. Rather, Kachkar argued that the documents were improperly obtained pursuant to a joint venture. But after hearing credible testimony from two agents involved with the search, *id*. at 17-19, the Magistrate Judge properly concluded that the joint venture doctrine does not apply here as the FDIC agents did nothing more than assist Canadian law enforcement officers in complying with the MLAT request, *id*. at 21-23. Because the joint venture doctrine does not apply here, the Magistrate Judge also properly concluded that the Government was not required to obtain a search warrant after the documents arrived in the United States. *Id*. at 24-25. Therefore, the trial judge correctly adopted the Report in

his January 4, 2019, order, [ECF No. 454], and admitted the evidence at trial.

Further, the Government correctly notes that Kachkar has not established that he had a reasonable expectation of privacy to the documents at issue. The MLAT request sought Inyx records concerning the loans it received from Westernbank. The Canadian court's Gathering Order authorized the search of Inyx documents, excluding privileged material. So, to prevail on this issue, Kachkar must show that he had an individual privacy interest in those Inyx business records, *see United States v. Vicknair*, 610 F.2d 372, 379 (5th Cir. 1980); he has not done so. Kachkar derived no reasonable expectation of privacy in Inyx's corporate documents based on his role as CEO or his use of Inyx property. *See id*.

### III.    Email Evidence Not Admitted at Trial

Kachkar also argues that the trial judge erroneously excluded emails that should have been admitted as business records under Rule 803(6) of the Federal Rules of Evidence. At trial, the defense sought to admit emails between lawyers for Western Bank and Colin Hunter, a former Inyx employee. The emails concerned settlement negotiations for Hunter and another individual in Westernbank's lawsuit in Puerto Rico against Inyx, Kachkar, and others related to a defaulted loan. [ECF Nos. 530-1 & 530-2]. The Government objected, in part, to the admission of the emails as hearsay because the emails were prepared by counsel in anticipation of litigation and settlement and because the emails were not a part of the bank's regular business activity. [ECF No. 546:12, 19]. The trial judge sustained the hearsay objection, concluding that the emails were not business records because settlement discussions between lawyers, and between lawyers and bank officials, are not regular business activities of a bank. [ECF No. 546:15, 19, 72-73; ECF No. 547:5-6].

The trial judge correctly excluded the emails at issue. Email communications sent from, or

received by, a bank regarding a loan debt might properly be considered part of that bank's regularly conducted business activity. *See United States v. Cone*, 714 F.3d 197, 220 (4th Cir. 2013). But, for "properly authenticated e-mails [to] be admitted into evidence under the business records exception, it would be insufficient to survive a hearsay challenge simply to say that since a business keeps and receives e-mails, then *ergo* all those e-mails are business records falling within the ambit of Rule 803(6)(B)." *Id.* As the email communications here were between lawyers to negotiate a settlement with Hunter and another individual in Westernbank's lawsuit, the trial judge properly excluded them as hearsay. The fact that an officer of the bank was copied on and retained the emails does not change the hearsay nature of those communications. *See id.* Therefore, Kachkar is not likely to succeed on appeal on this basis.

IV. **Sentencing Errors**

A. **§ 3553(a) Errors**

Kachkar argues that the trial judge committed procedural errors at sentencing with respect to the 18 U.S.C. § 3553(a) factors. First, Kachkar argues that the trial judge failed to consider Westernbank's grossly negligent lending practices as conduct relevant to the nature and circumstances of the offense under § 3553(a). But he cites no authority for the proposition that a district court must consider victim negligence as a mitigating factor under § 3553(a). Even so, Kachkar is factually incorrect. While the trial judge expressed skepticism about considering Westernbank's alleged gross negligence under § 3553(a), he clearly considered Westernbank's lending practices at sentencing. Throughout the sentencing hearing, the trial judge made references to the bank's conduct as grossly negligent, incompetent, and "asleep at the switch." [ECF No. 613:140; ECF No. 614:22, 45, 156].

Second, Kachkar argues that the trial judge failed to consider a detailed chart which showed that dozens of fraud offenders received significantly lower sentences despite similar or even higher loss amounts. According to Kachkar, the trial judge violated its obligation under § 3553(a) to avoid unwarranted sentence disparities among defendants with similar records. At sentencing, the trial judge noted that the chart was not helpful because it did not provide enough information to sufficiently compare defendants in unrelated cases. [ECF No. 614:148-50]. In particular, the court noted that the proffered chart did not indicate information regarding whether other defendants received sentencing reductions based on substantial assistance. *Id*. The trial judge's decision was correct as Kachkar failed to establish that the chart contained proper comparators. Therefore, Kachkar is not likely to succeed on appeal on either of the § 3553(a) claims of error.

### B.    § 2B1.1(b)(17)(B)(i) Enhancement

At sentencing, the trial judge applied a four-level enhancement to Kachkar's guidelines, pursuant to U.S.S.G. § 2B1.1(b)(17)(B)(i), because the offense "substantially jeopardized the safety and soundness of a financial institution." U.S.S.G. § 2B1.1(b)(17)(B)(i). On appeal, Kachkar argues that the enhancement should not apply because the Government failed to prove he caused Westernbank's financial hardship. According to Kachkar, other factors unrelated to the Inyx loans caused the bank's failure. However, the trial judge properly applied the enhancement because the evidence supported a finding that Kachkar substantially jeopardized the safety and soundness of Westernbank. [ECF No. 614:105-109, 112, 121]. As noted by the trial judge, Westernbank became insolvent and collapsed after Kachkar caused Inyx to default on $142 million in loans. *Id*. at 106-109. As a result, the bank could not fully refund deposits, payments, or investments on demand and was forced to merge with another financial institution to continue

14

operations. *Id*. Because the trial judge properly applied the § 2B1.1(b)(17)(B)(i) enhancement, Kachkar does not show a likelihood of success on appeal as to this issue.

### C.     The $103 Million Restitution Award

At sentencing, the trial judge awarded the FDIC $103,490,005 in restitution pursuant to the Mandatory Victim Restitution Act ("MVRA"), 18 U.S.C. § 3663A. According to the MVRA, "when sentencing a defendant convicted of an [enumerated offense], the court shall order . . . that the defendant make restitution to the victim of the offense." 18 U.S.C. § 3663A(a)(1). There is no dispute here that wire fraud is an enumerated offense under the statute or that the FDIC is the victim for restitution purposes. Rather, on appeal, Kachkar argues that the restitution award violated his Sixth Amendment rights because the underlying loss amount was found by a judge by a preponderance of the evidence, contrary to *Apprendi v. New Jersey*, 530 U.S. 466 (2000), instead of by a jury beyond a reasonable doubt. Alternatively, Kachkar argues that the Government did not prove the loss amount by a preponderance of the evidence because it relied on an unsubstantiated chart.

Plaintiff's *Apprendi* argument fails because the Sixth Amendment does not apply to restitution. In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. "[T]he 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely v. Washington*, 542 U.S. 296, 303 (2004) (emphasis and citations omitted).

In *Dohrmann v. United States*, the Eleventh Circuit explicitly held that "*Apprendi* does not

apply to a restitution order." 442 F.3d 1279, 1281 (11th Cir. 2006). Therefore, there is no need for a jury to determine restitution beyond a reasonable doubt. On appeal, Kachkar argues that the holding in *Dohrmann* has been abrogated by the Supreme Court's decision in *Southern Union Co. v. United States*, 567 U.S. 343 (2012). There, the Supreme Court held that "the rule of *Apprendi* applies to the imposition of *criminal fines*," *id*. at 360 (emphasis added), as criminal fines, like imprisonment or a death sentence, "are penalties inflicted by the sovereign for the commission of offenses," *id*. at 349.

Kachkar's argument fails as *Dohrmann* remains binding Eleventh Circuit precedent. The Supreme Court did not address restitution in *Southern Union*. And, as noted by the Government, restitution is different from criminal fines as restitution has compensatory and remedial purposes while fines are punitive in nature. Another important distinction is that unlike criminal fines, there is no statutory maximum for restitution. Therefore, there can be no *Apprendi* violation where no statutory maximum is prescribed for restitution. *See id*. at 353. For these reasons, Kachkar is not likely to succeed on appeal on this issue.

### CONCLUSION

Based on the forgoing, the Court finds, by clear and convincing evidence, that Kachkar—a citizen of Canada—is a risk of flight and that no condition or combination of conditions will reasonably assure that he will appear in court as required if he is released on bond pending appeal. The Court further finds that the issues raised by Kachkar on appeal are not substantial questions of law or fact likely to result in reversal, an order for new trial, a sentence that does not include a term of imprisonment, or a reduced sentence.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 30th day of November, 2020.

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

cc:    Counsel of Record

17